**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CITIZENS SECURITIES, INC.

     Plaintiff,

v.

SCOTT COPPOCK,

     Defendant.

CIVIL ACTION NO.: _____

## <u>COMPLAINT</u>

As and for its Complaint against Defendant Scott Coppock, Plaintiff Citizens Securities, Inc. ("Citizens") states as follows:

### <u>PARTIES, JURISDICTION, AND VENUE</u>

1.     Citizens is a corporation organized and existing pursuant to the laws of the State of Rhode Island with its principal office located in Johnston, Rhode Island.

2.     Citizens formerly was known as CCO Investment Services Corp. ("CCO" or "CCOISC") and is the successor-in-interest of CCOISC. Citizens is a wholly-owned subsidiary of Citizens Bank, N.A. ("Citizens Bank").

3.     Citizens is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority ("FINRA").

4.     Upon information and belief, Mr. Coppock is a natural person who resides in Chelmsford, Massachusetts.

5.     Mr. Coppock is registered as a broker and investment advisor with the FINRA, FINRA Central Registration Depository No. 5343465.

6.      This Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, in that the parties are of diverse citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      This Court also has jurisdiction over Citizens' claim under the Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, based on 28 U.S.C. § 1331 as the claim presents a federal question under the laws of the United States and supplemental jurisdiction over Citizens' state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is properly in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims for relief occurred in this District.

**<u>FACTS</u>**

9.      Citizens is a financial services firm that provides customers with investment advice, financial planning, portfolio management, and other related services.

10.     Citizens employs Financial Advisors to advise clients and manage clients' investments.

11.     Citizens' Financial Advisors are assigned to specific Citizens Bank branches to service the investment needs of Citizens Bank's clients. Because Citizens is a bank broker-dealer, almost all of its Financial Advisors' clients are referred through bank branch channels. For instance, when a Citizens Bank branch employee learns that an existing Citizens Bank client needs investment advice or services, that employee may refer or introduce the client to a Citizens Advisor. Thus, the vast majority of the Citizens clients whom Citizens' Financial Advisors serve are preexisting clients of Citizens Bank.

12.     Citizens' client information—including client lists and names, addresses, investment holdings, and other financial information—is valuable, confidential, not generally

known throughout the securities industry, and not readily or easily ascertainable by Citizens' competitors.

13.     Further, clients consider their financial information to be highly secret and expect Citizens to take reasonable steps to ensure its confidentiality.

14.     Citizens does in fact take steps, at significant effort and expense, to ensure that its confidential client information is secured and not available to the public. These steps include (a) requiring employees (*e.g.*, Mr. Coppock) to execute confidentiality agreements; and (b) instituting and monitoring security systems that limit access to hard copy and computer data and restrict access to confidential client information to only those persons who have a legitimate business and need to access it.

15.     Citizens also maintains confidential information regarding its employees, including their identities, contact information, and roles. This information is not publicly available and is treated as proprietary by Citizens.

16.     Citizens hired Mr. Coppock as a Financial Consultant (now known as a Financial Advisor) in December 2011.

17.     As a condition of employment, Mr. Coppock entered into an Employment Agreement with Citizens. A copy of the Employment Agreement is attached as **Exhibit A**.

18.     In the Employment Agreement, Mr. Coppock recognized and agreed that documents containing Citizens' client information were confidential trade secrets and were the exclusive property of Citizens. He agreed to return all such documents to Citizens upon cessation of his employment with Citizens, and agreed not to use or disclose those documents or information contained therein except in connection with his employment with Citizens:

> a.  You agree that all memoranda, notes, records or other documents made, or compiled by you, or made available to you,

during the term of this Agreement concerning the business of CCOISC or [Citizens] Bank, or any account or portfolios of any of CCOISC's or Bank's customers, are confidential business records and shall remain the property of CCOISC and Bank, and shall be delivered by you to CCOISC upon the termination of your employment or at any other time at CCOISC's request, and that none of such records, nor any part of them, is to be removed from the branch of Bank at which you are employed, either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except as necessary in the ordinary course of conducting business for CCOISC.

b.  You may obtain or have access to certain proprietary, privileged or other confidential information of CCOISC and Bank and their clients or customers, or prospective clients or customers, including those clients or customers you bring in (collectively referred to as "Confidential Information"). Confidential Information includes, but is not limited to, the identity of clients or customers or prospective clients or customers, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures, or personnel information, of CCOISC or Bank. Confidential Information also includes any non-public information disclosed by a client or customer, potential client or customer, or other third party which CCOISC or Bank has agreed or is otherwise obligated to keep confidential, including, but not limited to, financial information concerning such individual or entity. You acknowledge and agree that CCOISC and Bank have obligations to protect the confidentiality of this information and that those obligations extend to you. You acknowledge and agree that such Confidential Information derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, competitors of CCOISC or Bank, that it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and that it is therefore trade secret information under applicable law, including the Uniform Trade Secrets Act.

You shall not in any way, commercial or otherwise, except to the extent required by the proper performance of your duties pursuant to this Agreement, use or disclose to any person, for any reason or at any time (whether during or after the term of this Agreement), any Confidential Information.

Ex. A ¶ 10(a)-(b).

19.    In addition, Mr. Coppock agreed that for a period of one year after the cessation of his employment with Citizens, he would not solicit any Citizens' client whose name became known to him as a direct or indirect result of his employment with Citizens. Mr. Coppock further agreed that he would not induce any Citizens employee to leave their employment, and would not induce, or assist and person or entity in soliciting, the employment of Citizens' employees:

 c. Except as otherwise required in connection with the performance of your duties as contemplated herein, you agree that, during the term of this Agreement and for a period of one (1) year thereafter, you will not, either directly or indirectly, for your own account or as an agent, servant or employee, officer, director, shareholder, partner, member or manager of any entity, or member of any firm, or participant in any venture:

  (i) Induce any person employed by CCOISC or Bank to leave such employment, or otherwise interfere with the relationship of CCOISC or Bank and any other employees;

  (ii) Engage, hire, employ or solicit or assist any other person or entity in any effort to engage, hire, employ, or solicit the employment of any of the employees of CCOISC or Bank; or

  (iii) Solicit by mail, phone, personal meeting or in any other manner the retail securities brokerage, investment advisory or insurance business of any customer whose name became known to you as a direct or indirect result of your employment with CCOISC and/or Bank.

*Id.* ¶ 10(c)(i)-(iii).

20.    Mr. Coppock also recognized in the Employment Agreement that any breach of these provisions may result in irreparable injury to Citizens, for which money damages are insufficient, and that Citizens is entitled to enforce these provisions by obtaining an injunction for specific performance. *Id.* ¶ 10(g).

21.    Citizens complied with all of its obligations under the Employment Agreement.

22.    Citizens Financial Advisors also sign a Code of Ethics as a condition of their employment, in which they agree to keep client information confidential. Attached as **Exhibit B** and **Exhibit C** are Codes of Ethics that were in effect when Citizens employed Mr. Coppock. Attached as **Exhibit D**, **Exhibit E**, and **Exhibit F** are certificates of completion show Mr. Coppock's completion of Citizen's Business Conduct and Ethics training.

23.    On April 24, 2026, Mr. Coppock voluntarily resigned from his employment with Citizens and informed Citizens that he would be joining Ameriprise Financial Services ("Ameriprise").

24.    According to FINRA's records, Mr. Coppock became registered with Ameriprise on the same day he resigned.

25.    Upon information and belief, after departing Citizens, Mr. Coppock began working for or on behalf of Ameriprise in Westford, Massachusetts.

26.    Ameriprise is a direct competitor of Citizens.

27.    Shortly after Mr. Coppock's resignation, Citizens learned that Mr. Coppock was actively initiating contact with and soliciting the Citizens clients whom Mr. Coppock previously serviced while employed with Citizens.

28.    Specifically, Mr. Coppock called numerous customers, informed them that he had left Citizens, and solicited their business.

29.    Attached as **Exhibit G** and **Exhibit H** are statements from two Citizens customers in which they indicate that Mr. Coppock called them and asked them to transfer their accounts to his new firm.

6

30.     As a result of Mr. Coppock's solicitation, several clients have transferred their investments from Citizens to Ameriprise, and upon information and belief, other Citizens clients are considering a transfer to Ameriprise.

31.     As of the date of filing this Statement of Claim, at least 41 customers have transferred over 34 million dollars in investments from Citizens to Ameriprise as a result of Mr. Coppock's improper solicitation.

32.     Mr. Coppock took confidential client and employee information with him upon his departure from Citizens or has used confidential information to contact and solicit clients to transfer their accounts from Citizens to Ameriprise. This information is confidential and proprietary to Citizens and is not readily available to Mr. Coppock or Ameriprise other than through Mr. Coppock's former employment with Citizens.

33.     In addition to misusing Citizens' client information, Mr. Coppock provided Ameriprise with the name and contact information of at least one Citizens employee. Ameriprise used this information to cold call that employee for recruiting purposes. The Ameriprise recruiter identified themselves as recruiting on behalf of Ameriprise and expressly disclosed to the employee that Mr. Coppock had provided his name and contact information—information that Mr. Coppock possessed solely by virtue of his employment with Citizens.

34.     Attached as **Exhibit I** is a statement from Christopher W. Ethier, Vice President and Wealth Advisor for Citizens, whom the above-mentioned Ameriprise recruiter cold called for recruiting purposes.

35.     Mr. Coppock breached the Employment Agreement by contacting and soliciting clients whom he serviced at Citizens, by taking confidential and proprietary information

belonging to Citizens, and by providing Citizens' employee information to Ameriprise to facilitate the recruitment of Citizens' employees.

36.     Mr. Coppock's actions have caused and will cause non-compensable damage to Citizens' business reputation and goodwill, which are invaluable assets in the securities industry, and which Citizens has developed at great effort and expense over the years. Mr. Coppock's actions have also placed Citizens' workforce at risk by facilitating the recruitment of Citizens' current employees. In addition, Mr. Coppock's actions, if not restrained, may cause regulatory damage to Citizens.

37.     Unless Mr. Coppock is restrained from using the confidential and proprietary information that he has misappropriated and is restrained from contacting and soliciting Citizens' clients pursuant to the Employment Agreement, and from inducing or assisting in the solicitation of Citizens' employees, he will continue to use the information to the detriment of Citizens and to solicit Citizens' clients to transfer their accounts to Ameriprise, and to assist Ameriprise in recruiting Citizens' employees.

## COUNT I – BREACH OF CONTRACT

38.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 37 as though fully set forth herein.

39.     The Employment Agreement is a valid and binding contract between Citizens and Mr. Coppock.

40.     Citizens performed its obligations under the Employment Agreement.

41.     Mr. Coppock breached the Employment Agreement by taking Citizens' confidential client information and soliciting Citizens' clients, and by providing at least one Citizens employee name and contact information to Ameriprise for recruiting purposes.

42.     As a result of Mr. Coppock's breach of contract, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

43.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 42 as though fully set forth herein.

44.     The Employment Agreement is a valid and binding contract between Citizens and Mr. Coppock.

45.     By failing to satisfy his confidentiality and non-solicitation obligations under the Employment Agreement in good faith, and by facilitating Ameriprise's recruitment of at least one Citizens employee in violation of the non-interference obligations of the Employment Agreement, Mr. Coppock deprived Citizens of the benefit of the parties' bargain, which Citizens reasonably expected to receive, and breached the implied covenant of good faith and fair dealing.

46.     As a result of Mr. Coppock's breach of the covenant, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTUAL OR ADVANTAGEOUS BUSINESS RELATIONS

47.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

48.     Citizens has contracts or advantageous business relations with its clients. Mr. Coppock is aware of those contracts and relationships.

49.     Mr. Coppock tortiously interfered with Citizens' contracts and business relationships with its clients when he usurped Citizens' confidential and proprietary client information and solicited Citizens' clients, inducing the clients to break the contract or terminate their relationship with Citizens.

50.    Mr. Coppock acted for a wrongful and improper motive or used dishonest, unfair, or improper means in interfering with Citizens' contracts and business relationships with its clients.

51.    As a result of Mr. Coppock's tortious interference, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

### COUNT IV – TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONS

52.    Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

53.    Citizens has an advantageous employment relationship with its current employees.

54.    Mr. Coppock is aware of those employment relationships.

55.    Mr. Coppock tortiously interfered with Citizens' employment relationships when he provided Ameriprise with the names and contact information of at least one current Citizens employee for use in recruiting them away from Citizens. An Ameriprise recruiter cold called that employee, identifying themselves as acting on behalf of Ameriprise and disclosing that Mr. Coppock had disclosed his contact information.

56.    Mr. Coppock acted for a wrongful and improper motive and used dishonest, unfair, and improper means—namely, Citizens' own confidential employee information—in interfering with Citizens' employment relationships.

57.    As a result of Mr. Coppock's tortious interference with Citizens' employment relationships, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

## COUNT V – MISAPPROPRIATION OF TRADE SECRETS
## UNDER MASS. GEN. LAWS CH. 93, § 42, *et seq.*

58.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 57 as though fully set forth herein.

59.     Citizens' confidential client information is a trade secret that Citizens possesses and uses in its business, and which gives Citizens an opportunity to obtain an advantage over competitors who do not know or use it.

60.     Citizens took reasonable steps to preserve the secrecy of its confidential client information.

61.     Mr. Coppock has misappropriated and, unless enjoined, will continue to misappropriate Citizens' trade secrets by using Citizens' confidential client and employee information in breach of an agreement, confidential relationship or duty to limit the disclosure or use of the confidential information, or as a result of acquisition by improper means.

62.     Mr. Coppock's conduct was willful, malicious, and in bad faith.

63.     As a result of Mr. Coppock's misappropriation of Citizens' trade secrets, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

## COUNT VI – MISAPPROPRIATION OF TRADE SECRETS UNDER
## THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1839, *et seq*.

64.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 63 as though fully set forth herein.

65.     Citizens' confidential client information is a trade secret that Citizens possesses and uses in its business, and which gives Citizens an opportunity to obtain an advantage over competitors who do not know or use it.

66.     Citizens took reasonable steps to preserve the secrecy of its confidential client information.

67.     Citizens' confidential client information is used in, or is intended for use in, interstate or foreign commerce.

68.     Mr. Coppock has misappropriated and, unless enjoined, will continue to misappropriate Citizens' trade secrets by using Citizens' confidential client information in breach of an agreement, confidential relationship or duty to limit the disclosure or use of the confidential information, or as a result of acquisition by improper means.

69.     Mr. Coppock's conduct was willful, malicious, and in bad faith.

70.     As a result of Mr. Coppock's misappropriation of Citizens' trade secrets, Citizens has suffered irreparable harm and will continue to suffer irreparable harm until injunctive relief issues.

**COUNT VII – CONVERSION**

71.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 70 as though fully set forth herein.

72.     Mr. Coppock converted Citizens' client information when he exercised unauthorized control or dominion over client information that was owned by Citizens to Citizens' exclusion and over which he had no right of possession at that time.

73.     As a result of Mr. Coppock's conversion, Citizens has suffered irreparable harm, and will continue to suffer irreparable harm until injunctive relief issues.

**COUNT VIII – BREACH OF FIDUCIARY DUTY**

74.     Citizens repeats and re-alleges the allegations set forth in Paragraphs 1 through 73 as though fully set forth herein.

12

75. As an employee of Citizens, Mr. Coppock owed Citizens a fiduciary duty.

76. Mr. Coppock breached his fiduciary duty of loyalty to Citizens by using Citizens' confidential information, entrusted to him as a Citizens employee, to divert business from Citizens, and by providing Ameriprise with the name and contact information of at least one current Citizens employee to facilitate his recruitment away from Citizens.

77. As a result of Mr. Coppock's breach of his duty of loyalty, Citizens has suffered irreparable harm and will continue to suffer irreparable harm until injunctive relief issues.

WHEREFORE, Citizens prays for the following relief:

1. That the Court enter a temporary restraining order and preliminary injunction, to remain in effect until this matter can be heard at arbitration, enjoining Mr. Coppock, whether directly or indirectly, whether or alone or in concert with others (*e.g.*, Ameriprise) until further order of this Court, as follows:

   (a) From directly or indirectly soliciting business from any current or prospective client of Citizens whom Mr. Coppock serviced or whose name became known to Mr. Coppock while he was employed by Citizens;

   (b) From altering, destroying, using, disclosing, or transmitting Citizens' records or the information contained therein, including but not limited to the names, addresses, email addresses, telephone numbers, and financial information of Citizens' current and prospective clients;

   (c) Requiring Mr. Coppock to immediately cease using and to return, within 24 hours of entry of a temporary restraining order, all original Citizens records and reproductions thereof, whether in paper, electronic, or other form;

(d) From altering any of Mr. Coppock's computer environments including desktops, laptops, tablets, and smart phones or mobile devices, including those that Mr. Coppock uses at or for Ameriprise, pending further order of this Court; and

(e) From directly or indirectly inducing, soliciting, or assisting any person or entity in inducing or soliciting any current employee of Citizens to terminate their employment with Citizens, including but not limited to providing any person or entity with the names, contact information, or any other identifying information of Citizens' employees for recruiting purposes.

2. That the Court order Mr. Coppock to pay Citizens' fees and costs, including reasonable attorneys' fees, for having to pursue this matter; and

3. That the Court award Citizens such other and further relief, both general and special, at law or in equity, to which Citizens is justly entitled.

Dated: May 12, 2026

Plaintiff,
CITIZENS SECURITIES, INC.
By its attorneys,

/s/ Geoffrey W. Millsom
Geoffrey W. Millsom (#653821)
Daniel J. Procaccini (#682452)
Michael A. D'Ippolito III (#698170)
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel:  (401) 274-7200
Fax:  (401) 351-4607
gmillsom@apslaw.com
dprocaccini@apslaw.com
mdippolito@apslaw.com

4923-6405-9562, v. 1

14